IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESTHER LITES and JESSE LITES** | : | CIVIL ACTION |
| | : | |
| **v.** | : | |
| | : | |
| **TRUMBULL INSURANCE COMPANY** | : | NO.  12-4167 |

**MEMORANDUM**

**RESTREPO, J.**                                                                                                    **OCTOBER 24, 2013**

      Plaintiffs, Esther and Jesse Lites, initiated this action against defendant, Trumbull Insurance Company ("Trumbull"), seeking a declaratory judgment that would retroactively apply full tort coverage to plaintiffs' automobile insurance policy.  See Pl.'s Compl. ¶¶ 1–16.  Plaintiffs seek this relief in order to pursue damages for pain and suffering in a separate third party personal injury lawsuit in state court arising out of an automobile accident.  Id. ¶¶ 13–14. Additionally, plaintiffs allege that defendant's conduct in failing to change plaintiffs' insurance coverage to full tort following a recorded telephone conversation between plaintiffs and defendant's representative during which plaintiffs requested a change in coverage constituted bad faith under Pennsylvania's bad faith statute, 42 Pa. CONS. STAT. ANN. § 8371.  See Compl. ¶¶ 22–26.

      Before the Court is Defendant's Motion for Summary Judgment, Plaintiffs' Answer thereto, and Defendant's Reply.  For the following reasons, Defendant's Summary Judgment Motion is granted.

1. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs' Complaint includes a claim for declaratory judgment, seeking a declaration of plaintiffs' rights and defendant's obligations under plaintiffs' insurance policy. Additionally, the Complaint alleges that defendant violated Pennsylvania's bad faith statute, 42 Pa. CONS. STAT. ANN. § 8371.

Plaintiffs were insured under an automobile policy with The Hartford for a policy period of August 6, 2009 to August 6, 2010.[1] See Def.'s Br. 2. Plaintiffs' policy provided only limited tort coverage. Id.; see also Declaration Sheet 2009-2010 (attached to Def.'s Br. as Ex. "A"). The policy was set to renew on August 6, 2010 for an additional 1-year term. See Def.'s Br. 2. On July 8, 2010, plaintiffs called defendant to request a change in their automobile insurance policy from limited tort coverage to full tort coverage. See Compl. ¶ 5. Plaintiffs spoke with defendant's employee, Pam Wade. Id. ¶ 8; see also Def.'s Br. 3. The conversation between Ms. Wade, and plaintiffs was recorded, a transcript of which is before the Court. See Tr. Recorded Statement 7/8/10 (attached to Def.'s Br. as Ex. "C").

During the conversation, Mr. Lites inquired about plaintiffs' current coverage under the policy. Id. at 1. Ms. Wade notified Mr. Lites that plaintiffs were currently covered by a limited-tort policy. Id. Both Mr. and Mrs. Lites spoke with Ms. Wade about including full-tort coverage in the policy and the costs associated with that change. See generally Tr. Recorded Statement 7/8/10. At first, however, Ms. Wade notified Mr. Lites that she could not make the change in coverage over the phone. Id. at 8. Rather, she stated that plaintiffs needed to complete, sign, and return a form to make the change. Id. at 8–9. Later in the conversation, however, Ms. Wade

---

[1] Defendant is an affiliate of The Hartford, and serves as The Hartford's underwriting company for plaintiffs' auto policy. See Def.'s Br. (Document 30-2) (citing Dep. of Shawn Jean 2/20/13, at 12:15-13:7 (attached to Def.'s Br. as Ex. "D")).

notified Mrs. Lites that the change to the policy's coverage could be made over the phone. See id. at 15 ("And I'm able to make that change for the automobile; let your husband know."). Of issue, however, is when this change would take effect - immediately, or upon renewal of the policy.

Six days after their conversation with Ms. Wade, on July 14, 2010, plaintiffs sent defendant a check in the amount of $1,398.00. See Compl. ¶ 7. This amount reflected the increase in the premium associated with the change from limited to full tort coverage. Id.

Nineteen days after the conversation between plaintiffs and Ms. Wade, on July 27, 2010, Mrs. Lites was injured in a car accident. Id. ¶ 3. She is currently pursuing a third party bodily injury claim against the insurance company of the other driver in that accident. Id. at ¶ 12. That insurance company has, however, denied Mrs. Lites compensation because of plaintiffs' "purported" selection of limited tort coverage. Id. ¶ 13. Prior to pursuing this action, plaintiffs requested that defendant provide them with a declaration sheet that stated that plaintiffs had full tort coverage at the time of the accident. Id. ¶ 16. On June 17, 2011, defendant stated, in writing, that it would not reform the policy to reflect full-tort coverage. Id. ¶ 19; see also Hartford's Review Ltr. (attached to Compl. as Ex. "D").

Defendant timely removed this action from state court, and after the Court's disposition of defendant's motion to dismiss and plaintiffs' motion to remand, plaintiffs filed an Amended Complaint (Doc. 17).[2]  Following the Court's disposition of several other motions including another motion to dismiss, another motion for remand, and a discovery motion, defendant filed its Answer to the Amended Complaint.

---

[2]Although this case was originally assigned to the Hon. Edmund V. Ludwig, it was reassigned to the calendar of the Hon. Stewart Dalzell on April 4, 2013. On July 19, 2013, the case was reassigned to my calendar.

Defendant filed this Motion for Summary Judgment on March 22, 2013.  In support thereof, it argues that plaintiffs are not entitled to reformation of the relevant automobile policy because they have failed to demonstrate mutual mistake or a unilateral mistake occurred.  See Def.'s Br. 6.  Defendant further argues that under the circumstances in this case plaintiffs are not entitled to damages under Pennsylvania's bad faith statute.  Id. 13.

**2.  LEGAL STANDARD**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In examining the motion, we must draw all reasonable inferences in the nonmovant's favor.  InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party.  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**3. DISCUSSION**

**(A) Plaintiffs' Claim for Reformation of the Contract**

In Pennsylvania, "courts have consistently held that it is not the province of the Court to alter a contract by construction or to make a new contract for the parties."  Twin City Fire Ins. Co. v. Pittsburgh Corning Corp., 813 F.Supp. 1147, 1179 (W.D. Pa. 1992) (citing Amoco Oil Co. v. Snyder, 478 A.2d 795 (Pa. 1984)).  A court may, however, grant reformation of a provision of a contract that has been "incorrectly or imperfectly expressed."  Id. (internal citation omitted). Under Pennsylvania law, a court may grant reformation "under certain circumstances when there have been mutual or unilateral mistakes."  A.P. Pino & Assocs., Inc. v. Utica Mut. Ins. Co., 2012 WL 2567093, *6 (E.D. Pa. July 3, 2012) (citing Regions Mortg., Inc. v. Muthler, 844 A.2d 580, 582 (Pa. Super. 2004), aff'd, 889 A.2d 39 (Pa. 2005)).  Nonetheless, reformation is an "equitable remedy that is sparingly granted." Id.; see also H. Prang Trucking Co., Inc. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980).

**(1)   Mutual Mistake**

A mutual mistake exists when "each party misunderstands the other's intent," or in the alternative when there exists a "mistake that is shared and relied on by both parties to a contract." Regions Mortg., 889 A.2d at 41 (citing Black's Law Dictionary 1023 (8th ed. 2004)).  Thus, under the doctrine of mutual mistake, "*both* parties to a contract are mistaken." De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 831 (E.D. Pa. 2011) (emphasis in

original).  Additionally, for a court to reform a contract, it must find that the parties "had a precedent common intent that is not reflected in the instrument. Also the actual intent of the parties must be shown." Giant Eagle, Inc. v. Fed. Ins. Co., 884 F. Supp. 979, 988 (W.D. Pa. 1995) (quoting Three-O-One Mkt., Inc. v. Dept. of Pub. Welfare, 439 A.2d 909, 911 (Pa. Commw. 1982)).

A party who seeks reformation on the ground of mutual mistake "must show evidence of 'mutual mistake by evidence that is clear, precise and convincing.'" A.P. Pino & Assoc., 2012 WL 2567093, at *6 (quoting Gen. Elec. Corp. v. Aetna Cas. & Sur. Co., 263 A.2d 448, 456 (Pa. 1970)); see also Roth v. Old Guard Ins. Co., 850 A.2d 651, 653 (Pa. Super. 2004) (noting that "to obtain reformation of a contract because of mutual mistake, the . . . party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing."); Giant Eagle, 884 F.Supp. at 988 (noting that "a party seeking reformation must establish both the existence of the mistake and the true intention of the parties by clear and convincing evidence.") (citing Dudash v. Dudash, 460 A.2d 323, 326-27 (Pa. Super. 1983)).

Here, plaintiffs cannot show through "evidence that is clear, precise and convincing," that a mutual mistake existed between the two parties. Roth, 850 A.2d at 653. A review of the transcript of the conversation between plaintiffs and Ms. Wade clearly reflects that Ms. Wade had the intent to make the requested change to the policy *at the time of renewal*, not earlier. See Tr. 16. Ms. Wade told Mrs. Lites, "[s]o I'm gonna do it all effective for [Mr. Lites] *as of the 6th of August*." Id. at 15 (emphasis added). She later reiterated that to Mrs. Lites and confirmed, "I'm making it all *effective upon the renewal date*." Id. at 16 (emphasis added). Thus, it is clear that Ms. Wade's intent was not to make the change effective immediately. Rather, her intent was to make the change effective upon renewal - an intent that she clearly articulated to Mrs. Lites on

6

multiple occasions.

Additionally, it is unclear whether plaintiffs themselves had the intent to make the change effective immediately.  Plaintiffs argue in their brief that their intent to make the change effective immediately was made clear in two ways.  First, plaintiffs argue that their intent was clear because in Mr. Lites' deposition, he stated that he called defendant "[b]ecause [he] wanted to upgrade [his] insurance to full tort."  See Pls.' Br. 4 (citing J. Lites' Dep. 2/20/13, at 33:4–8) (internal quotation marks omitted).  Second, plaintiffs point to the "totality of the recorded phone conversation between the plaintiffs and defendant['s] representative," as proof that plaintiffs had the intent to make the change effective immediately.  See Pls.' Br. 4.  They argue that there was "no other reason why the plaintiffs would have been placing that call to the defendant other than to upgrade to full tort status."  Id.

Although the transcript reveals that plaintiffs did intend to make a change to full-tort coverage, the transcript is void of any indication about *when* they sought to make the change.  Even if plaintiffs had the intent to make the change effective immediately, they never made that known to Ms. Wade - even when she told them twice that the change would be effective upon renewal.  Indeed, Mrs. Lites *agreed* to the change taking effect on August 6, 2010, the renewal date, as is evident by the following passage from the transcript:

> Q: No, I'm gonna do everything over the phone.  I'm making it *all effective upon the renewal date.*
>
> A2: Okay.

Tr. 15 (emphasis added).  In that plaintiffs are unable to demonstrate both the mistake and the actual intent of the parties in the "clearest manner," plaintiffs fail to show that reformation is appropriate under the doctrine of mutual mistake.  Giant Eagle, 884 F.Supp. at 988.

### (2)   Unilateral Mistake

Under Pennsylvania law, reformation may be available when one party to the contract has made a mistake, and the other side has knowledge of that mistake. Dudash, 460 A.2d at 327. A party seeking "reformation on the basis of . . . unilateral mistake may be granted relief if the party against whom reformation is sought has such knowledge of the mistake as to justify an inference of fraud or bad faith." Id. (citing Line Lexington Lumber & Millwork Co. v. Pa. Publ'g Corp., 301 A.2d 684 (1973)). The party seeking reformation must make this showing through "clear and convincing evidence." Regions Mortg., 844 A.2d at 582. If, however, the mistake is "unilateral, and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief." Kramer v. Schaeffer, 751 A.2d 241, 246 (Pa. Super. 2000) (quoting McFadden v. Am. Oil Co., 257 A.2d 283, 288–89 (Pa. Super. 1969)). A party who seeks reformation under the doctrine of unilateral mistake must prove not only the mistake, but also the actual intent of the parties. Kramer, 751 A.2d at 246 (citing Dudash, 460 A.2d at 327).

Here, plaintiffs are unable to demonstrate that there was a unilateral mistake by clear and convincing evidence, as is required under Pennsylvania law. Again, plaintiffs are unable to demonstrate that they had the intent to make the change to full-tort coverage effective immediately. Indeed, the record reflects that they acknowledged that the change would take effect on August 6, 2010, the renewal date of the policy. See e.g., Tr. 15. Additionally, plaintiffs *themselves* concede twice in their reply brief that plaintiffs agreed to have the change take effect on August 6, 2010. See Pls.' Br. 5 (acknowledging plaintiffs' "eventual concession to wait for the formal renewal period"); see also id. at 11 (noting "they conceded to wait until the policy renewal date of August 6, 2010 for the change to take effect").

Even assuming arguendo that plaintiffs could demonstrate they had the requisite intent during the phone conversation, their claim fails under the doctrine of unilateral mistake because they cannot show that defendant had knowledge of this intent.  Furthermore, although plaintiffs argue that they had the subjective intent to make the change effective on the date of the telephone call, the record is void of such evidence.  See id. at 9 (citing to the deposition testimony of plaintiff Jesse Lites as evidence that he had the subjective intent to make the change in coverage effective on the date of the telephone call).  Again, the transcript reveals no evidence that plaintiffs intended to convert their policy as of the date of the call.  Rather, as discussed above, plaintiffs agreed to the changes taking effect on the renewal date, August 6, 2010.  Since any intent of making the change effective immediately was not made clear through the conversation with defendant's employee, Ms. Wade, there is no evidence that defendant had the specific knowledge of this intent.  Thus, plaintiffs cannot show that defendant's knowledge of the mistake raises an "inference of fraud or bad faith." Regions Mortg., 844 A.2d at 582 (citing Dudash, 460 A.2d at 327).  Therefore, plaintiffs fail to demonstrate that the contract should be subject to reformation under the doctrine of unilateral mistake.

### (B)  Plaintiffs' Bad Faith Claim

Plaintiffs also bring a claim under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371.  The statute allows for a cause of action against insurance companies when the "court finds that the insurer has acted in bad faith towards the insured."  Id.  If a court makes such a finding, it is authorized to take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

>    (2) Award punitive damages against the insurer.
>
>    (3) Assess court costs and attorney fees against the insurer.

Id.  To recover under the statue, however, "a plaintiff must satisfy a two-prong conjunctive test: 1) the insurer did not have a reasonable basis for denying coverage *and* 2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." Post v. St. Paul Travelers Ins. Co., 629 F.Supp. 2d 477, 479 (E.D. Pa. 2009) (citing Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1189 (Pa. Super. 2007)) (emphasis in original).  "[C]ourts apply an objective test to the reasonable basis question: as long as a reasonable basis for denying the claim exists, even if it is not the actual basis relied upon by the insurance company, bad faith has not occurred."  Robbins v. Metro. Life Ins. Co. of Connecticut, 2008 WL 5412087, *8 (E.D. Pa. Dec. 29, 2008) (citing Williams v. Hartford Cas. Ins. Co., 83 F. Supp.2d 567, 574 (E.D. Pa. 2000)).

Bad faith has been defined to include "any frivolous or unfounded refusal to pay proceeds of a policy."  Robbins, 2008 WL 5412087, at *7 (quoting Terletsky v. Prudential & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)).  Mere negligence or bad judgment alone, however, does not constitute bad faith.  Id.  Additionally, an incorrect analysis of the law is not sufficient to establish bad faith liability.  See Jung v. Nationwide Mut. Fire Ins. Co., 949 F.Supp. 353, 360 n.7 (E.D. Pa. 1997) (noting that as long as the insurance company's actions were "reasonable, bad faith cannot be found even if their analysis of the law was wrong").  A plaintiff who brings a claim under the bad faith statute faces a heightened burden of proof - "[b]ad faith must be established by clear and convincing evidence."  Sypeck v. State Farm Mut. Auto. Ins. Co., 2012 WL 2239730, *3 (M.D. Pa. June 15, 2012) (citing O'Donnell ex. rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. 1999)).

Here, plaintiffs are unable to establish the first prong of the two-prong conjunctive test set forth in Post.  Although plaintiffs allege they intended for the change to full-tort coverage to take effect immediately, as discussed above, the transcript of their conversation with Ms. Wade reflects otherwise.  See Tr. 15.  Additionally, upon plaintiffs' request, a claims supervisor, Jennifer Dean, reviewed the recording of the conversation.  See Def.'s Br. 15.  When asked why she reviewed the recording, Ms. Dean responded, "[t]o try to see if there was some objective reason to - see if there was anything else that we could do for our insureds."  See J. Dean Dep. 2/21/2012, at 31: 2–6 (attached to Def.'s Br. as Ex. "I").  Furthermore, Ms. Dean stated that she made both an independent and objective review of the recording.  Id. at 31:16–22.  As a result of this review, defendant determined the change in the policy's coverage was effective upon the renewal date, and thus after Mrs. Lites' accident.  See Ltr. from J. Dean to Att'y Roden (attached to Def.'s Br. as Ex. "E") ("The representative then informed Esther Lites that Hartford would make the change on the auto policy to full tort effective upon the August 6, 2010 renewal date.  Esther Lites agreed to this.").  Defendant's conclusion that plaintiffs agreed to an effective date of August 6, 2010 for the change in coverage was a reasonable basis for denying payment to plaintiffs.

In response to defendant's Motion for Summary Judgment, plaintiffs argue that "there is enough evidence to show fraudulent representation which rises to the level of bad faith in this action."  See Pls.' Br. 10.  Plaintiffs have not, however, pled a fraudulent misrepresentation claim.  Even assuming *arguendo* that plaintiffs use the discussion of fraudulent misrepresentation as a way to demonstrate that they have met their burden of proof under Pennsylvania's bad faith statute, plaintiffs have not met their burden, in any event.  Plaintiffs argue that Ms. Wade made a "clear misrepresentation of the law," when she told plaintiffs that

they would need to complete additional forms prior to the change taking effect.  Id. at 11.  Plaintiffs fail, however, to acknowledge that Ms. Wade did inform Mrs. Lites that she would be making the change over the phone, and that the change would be effective upon the renewal date, August 6, 2013.  See Tr. 15.  Even if a misrepresentation or an incorrect analysis of the law was sufficient to constitute bad faith, which it is not per Jung, plaintiffs conceded to the change taking effect upon the renewal date.  See Pls.' Br. 11.  Therefore, plaintiffs are unable to meet their burden of demonstrating by clear and convincing evidence that defendant lacked a reasonable basis for denying coverage.  Thus, plaintiffs' claim under the bad faith statute fails.

     An appropriate Order follows.